UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH SAPIENZA, and
AFFORDABLE ELECTRICAL SERVICES
BY SAPIENZA ELECTRIC, INC.,

                Plaintiffs,

vs.                                            Civil No.:  20-CV-634

THE CITY OF BUFFALO,
KEVIN O'CONNOR,
JAMES COMERFORD, JR., and
SAL SCIANDRA, *et al.,*

                Defendants.
_____

## LOCAL RULE 56(A)2 STATEMENT OF FACTS
## IN OPPOSITION TO SUMMARY JUDGMENT

        Pursuant to Local Rules of Civil Procedure 7(a)(5) and 56, plaintiffs,

Joseph Sapienza and Affordable Electrical Services by Sapienza, Inc. ("Affordable Electric"),

submit this response to the City Defendants' Statement of Material Facts, as follows:

        1.      *At all times relevant, Plaintiff, Joseph Sapienza, was a resident of the*

*State of New York.  (Docket No. 1 – Complaint, ¶ 5).*

        **<u>Response:</u>**      Plaintiffs do not dispute this statement.


        2.      *At all times relevant, Plaintiff, Affordable Electric, was a domestic*

*corporation with its principal place of business in the State of New York.  (Docket No. 1 –*

*Complaint, ¶ 6).*

        **<u>Response:</u>**      Plaintiffs do not dispute this statement.

3.      *Plaintiff, Joseph Sapienza was issued a Master Electricians License by the City of Buffalo Examining Board of Electricians on or about September 13, 2013.  (Exhibit C, COB000043).*

**Response:**      Plaintiffs do not dispute this statement.

4.      *Since 2013, Mr. Sapienza has applied for and been issued thousands of electrical permits by the City of Buffalo.  (Exhibit O).*

**Response:**      Plaintiffs do not dispute this statement.

5.      *At no point has Kevin O'Connor held any personal, professional, or other animus towards Joseph Sapienza and his only interaction with Mr. Sapienza has been through his role with the City of Buffalo Department of Permits and Inspection Services, Electrical Division.  (Exhibit I, O'Connor Affidavit, ¶ 33).*

**Response:**      Plaintiffs dispute this statement as there is ample evidence in the record to support that Kevin O'Connor carried a lingering grudge against the Plaintiffs that continues to the present day.  For example:  Mr. O'Connor unilaterally suspended the Plaintiffs' Master-Electrician License in violation of proper procedure and despite not having the authority to do so; Mr. O'Connor told the Plaintiffs' the wrong date for the hearing before the Board; Mr. O'Connor issued an informal directive prohibiting other City of Buffalo electrical inspectors from inspecting the Plaintiffs' work and/or even communicating with the Plaintiffs; Mr. O'Connor called the Plaintiffs' customer and expressed his belief that the Plaintiffs were engaged in illegal or improper behavior; and Mr. O'Connor reported the Plaintiffs' use of jumpers to National Grid despite the practice being an "industry standard" that is accepted by

City of Buffalo inspectors.  *See* Sapienza Aff., ¶¶ 14-23, 30-31, 35-39; Dkt. 1, ¶¶ 71-97, 100, 107, 119-126, 222; John Greer Affidavit; Davenport Decl., Exhibits B, C, D, F, K, L, M.

6.  *Any allegation that Sal Sciandra has some type of personal or professional animus towards Joe Sapienza is false and Mr. Sapienza was treated no differently than by Mr. Sciandra in his role as a Member of the Examining Board of Electricians.  (Exhibit I, Sciandra Affidavit, ¶ 17).*

**Response:**  Plaintiffs dispute this statement as Mr. Sciandra has allowed the bad behavior by Kevin O'Connor described above to continue despite his constructive awareness of the same for years as he was named in the Notice of Claim filed by the Plaintiffs on May 31, 2019.  (*See* Dkt. 25-2).  Additionally, evidence before this Court demonstrates that the Plaintiffs were treated differently from "Member[s] of the Examining Board of Electricians" as the Plaintiffs' Master-Electrician License was suspended for a failure to file a permit whereas Members of the Board, such as John Greer, have performed electrical services in the City of Buffalo for years without obtaining permits without so much as a slap on the wrist.  *See* Sapienza Aff., ¶¶ 19, 32-33; Davenport Decl., Exhibit L.

7.  *The Examining Board of Electricians is empowered to investigate and examine "all charges preferred against any person holding a [master electrician] license. (Docket No. 1 – Complaint, ¶ 91; Exhibit N).*

**Response:**  Plaintiffs do not dispute this statement.

8.      *City of Buffalo Charter and Code Chapter 165, § 165.17, provides "No electrical work shall be installed, changed or added to without a permit from the Division of New Construction first having been obtained . . .". (Exhibit N).*

**<u>Response:</u>**      Plaintiffs do not dispute this statement.

9.      *Plaintiffs performed electrical work at 49 Cortland prior to applying for a permit with the City of Buffalo Department of Permit and Inspection Services.  (Exhibit I, O'Connor Affidavit, ¶ 40-43).*

**<u>Response:</u>**      Plaintiffs do not dispute this statement.

10.      *Plaintiffs' were notified of the order to appear before the Examining Board of Electricians at the September Board Meeting for their performance of work without a proper permit.  (Docket No. 1 – Complaint, ¶ 92; Exhibit I, O'Connor Affidavit, ¶ 46).*

**<u>Response:</u>**      Plaintiffs dispute this statement as the evidence in the record demonstrates that the Plaintiffs effectively received no notice before Kevin O'Connor unilaterally suspended the Plaintiffs' Master-Electrician License.  For example, Mr. O'Connor told Mr. Sapienza the wrong date for the hearing during his less than one minute phone conversation with Mr. Sapienza on or about August 31, 2018; the City Defendants did not provide the Plaintiffs with written notice of the hearing, the charges preferred against them, and the factual basis for those charges; and Mr. O'Connor improperly suspended the Plaintiffs' License for an alleged failure to appear for a hearing on September 12, 2018 without following proper procedure and without providing the Plaintiffs an opportunity to be heard.  *See* Sapienza Aff., ¶¶ 14-27; Dkt. 1, ¶¶ 71-97, 100; John Greer Affidavit; Dkt. 25-13, ¶ 7; Davenport Decl., Exhibit F.

- 4 -

11.   *Plaintiffs failed to appear before the Examining Board of Electricians at the September Board Meeting.  (Docket No. 1 – Complaint; Exhibit I, ¶ 46).*

**Response:**   Plaintiffs dispute this statement as it is factually incomplete.  For the reasons explained above, the Plaintiffs were provided with insufficient notice of the alleged hearing before the Board on September 12, 2018, which ultimately led to the suspension of the Plaintiffs' Master-Electrician License.  *See* Sapienza Aff., ¶¶ 14-23; Dkt. 1, ¶¶ 71-96; John Greer Affidavit.

12.   *After Plaintiffs failed to appear before the Board at the September meeting, they were notified via phone call and written correspondence that their license had been suspended and advised of the steps needed to be taken to have it restored.  (Docket No. 1 – Complaint ¶ 97, 100; Exhibit C, COB000017; Exhibit I, ¶ 46).*

**Response:**   Plaintiffs dispute this statement as it is factually incomplete.  For the reasons explained above, the Plaintiffs were provided with insufficient notice of the alleged hearing before the Board on September 12, 2018, which ultimately led to the suspension of the Plaintiffs' Master-Electrician License.  *See* Sapienza Aff., ¶¶ 14-23; Dkt. 1, ¶¶ 71-96; John Greer Affidavit.  Additionally, the written correspondence did not advise the steps needed to be taken to have it restored.  Instead, it merely stated that the Plaintiffs were to contact Kevin O'Connor, and that, "No License will be issued until all approvals for said license have been met," without stating what those approvals were.  *See* Davenport Decl., Exhibit E.

13.     *Plaintiffs have been issued hundreds, if not thousands, of permits since that time by the City of Buffalo.  (Exhibit O).*

**Response:**     Plaintiffs do not dispute this statement.


14.     *Defendants have never made any false, malicious, derogatory, retaliatory, or otherwise unlawful statements about the Plaintiffs.  (Exhibit I).*

**Response:**      Plaintiffs dispute this statement as Kevin O'Connor's recorded conversation with Jacky Chanthanousone, property owner at 78 Arthur Street, demonstrates that Mr. O'Connor made reckless assertions of fact expressing his belief that the Plaintiffs and their employee at the time, Richard Morgan, were engaged in inappropriate or illegal behavior. Mr. O'Connor made these reckless assertions of fact in his capacity as the Chief Electrical Inspector for the City of Buffalo without inspecting or even appearing at Ms. Chanthanousone's property to collect evidence to substantiate his claims.  At no point did Mr. O'Connor disclose the facts underlying his opinion that the Plaintiffs were engaged in "shenanigans" at 78 Arthur Street, which means an average listener of the statement would not have known that his statements were merely opinions.  To date, the City Defendants have provided the Plaintiffs with no evidence to substantiate Mr. O'Connor's expressions of perceived facts to Ms. Chanthanousone relating to alleged illegal or inappropriate behavior by the Plaintiffs with respect to their performance of electrical services at her property.  *See* Davenport Decl., Exhibit D; Sapienza Aff., ¶¶ 36-37.

15. *Plaintiffs were treated no differently than any other similarly situated contractor at any point relevant to, or alleged in, Plaintiffs' Complaint. (Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G; Exhibit H; Exhibit I; Exhibit J; Exhibit K; Exhibit L; Exhibit M; Exhibit O).*

**Response:**   Plaintiffs dispute this statement as there is ample evidence in the record before the Court that shows the Plaintiffs were treated differently from other master electricians licensed in the City of Buffalo.  For example, shortly after the Plaintiffs filed an Article 78 petition seeking a writ of mandamus compelling the City of Buffalo to, inter alia, perform certain inspections of electrical services performed by the Plaintiffs, Kevin O'Connor issued an informal directive forbidding other City of Buffalo inspectors from inspecting the Plaintiffs' work; Mr. O'Connor repeatedly called National Grid to report the Plaintiffs' use of jumpers, despite the use of jumpers being an "industry standard" in Western New York; and the City Defendants' do not identify any other occasions where Mr. O'Connor called the customer of a master electrician to convince the customer to filed a complaint against the electrician they hired.  Dkt. 1, ¶ 119-126, 128, 222; Sapienza Aff., ¶¶ 35-39; Davenport Decl., Exhibits B, C, D, K.


16. *The City of Buffalo received Plaintiffs' Notice of Claim, sworn to May 31, 2019, on or about June 5, 2019.  (Exhibit A).*

**Response:**   Plaintiffs do not dispute this statement.

17. *Plaintiffs' Notice of Claim did not allege claims of*

*Defamation/Defamation Per Se, Tortious Interference with Contractual Relations, Intentional*

*Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, or negligent hiring*

*and training. (Exhibit A).*

**<u>Response:</u>**    Plaintiffs dispute this claim as the thirteen-page notice of claim submitted

by the Plaintiffs provided the City Defendants with notice of the essential facts underlying these

state-law claims. *See* Dkt. 25-2.


18. *Plaintiffs filed their Complaint in this matter on June 6, 2020. (Docket*

*No. 1).*

**<u>Response:</u>**    Plaintiffs do not dispute this statement.


19. *The alleged conduct which formed the basis for the Plaintiffs' Intentional*

*Tort claims occurred more than one (1) year prior to June 6, 2020, when the Plaintiffs filed their*

*Complaint in this matter. (Docket No. 1; Exhibit A).*

**<u>Response:</u>**    Plaintiffs' dispute this statement as the alleged conduct which forms the

basis for the Plaintiffs' Intentional Tort claims has occurred continuously throughout the duration

of Kevin O'Connor's time as the Chief Electrical Inspector for the City of Buffalo, and in fact

has not ceased since the Plaintiffs' filing of this complaint. *See* Davenport Decl., Exhibits B, I,

K, M; Sapienza Affidavit; and Dkt. 1, ¶¶ 221-267.

20.   *A Stipulation of Dismissal against the Defendants, Joseph McSweeney and National Grid, signed by counsel for the Plaintiffs and Defendants, was filed in this Court on or about May 13, 2021.  (Docket No. 21 and Docket No. 22)*

**Response:**   Plaintiffs do not dispute this statement.

## COUNTER-STATEMENT OF MATERIAL FACTS

21.   Kevin O'Connor has served as a "temporary" or "provisional" electrical inspector for the City of Buffalo since 2013 despite never passing a civil service examination.  In July of 2018, Kevin O'Connor was hired as a "provisional" Chief Electrical Inspector for the City of Buffalo, which was approved by the Commissioner of the City of Buffalo's Department of Permit & Inspection Services ("DPIS"), defendant James Comerford, Jr.  *See* Davenport Decl., Exhibits G and H.

22.   Plaintiffs brought to the attention of National Grid and the City of Buffalo issues associated with National Grid's lack of a jumper program.  Plaintiffs requested the help of Erie County Legislator, Thomas A. Loughran, who sent a letter to National Grid, the NYS Public Service Commission, and others regarding the lack of a jumper program and how the lack of a jumper program predominantly affected lower-income communities.  In response to that letter, Kevin O'Connor called Mr. Sapienza and said, "Why does it always have to be about race?" *See* Davenport Decl., Exhibit J; Sapienza Aff., ¶¶ 14-17; Dkt. 1, ¶¶ 71-90.

23.   On or about August 31, 2018, Kevin O'Connor called Mr. Sapienza and mumbled that the City of Buffalo's Examining Board of Electricians ("Board") commenced an investigation against the Plaintiffs.  Mr. Sapienza thought that he heard Mr. O'Connor say that the hearing was September 26, 2018.  After telling Mr. Sapienza the date for the hearing,

Mr. O'Connor abruptly hung up the phone.  The phone call lasted less than a minute.

*See* Sapienza Aff., ¶¶ 18-22; Dkt. 1, ¶¶ 91-94.

24.     Plaintiffs did not receive any written correspondence from

Kevin O'Connor or any other City of Buffalo employee confirming the date of the hearing and

providing the factual basis for the charges against the Plaintiffs.  *See* Sapienza Aff., ¶ 23; Dkt. 1,

¶¶ 95-96.

25.     On the afternoon of September 12, 2018, Kevin O'Connor called

Mr. Sapienza and told him that his Master-Electrician License was suspended because he did not

appear for a hearing before the Board.  The City of Buffalo followed up the next day with a letter

notifying the Plaintiffs that their License was suspended by Kevin O'Connor for a failure to

appear for a scheduled hearing before the Board. Dkt. 1, ¶¶ 97, 100; Sapienza Aff., ¶ 23.

26.     Board meeting minutes for the September 12, 2018 hearing demonstrate

that the Board never discussed charges allegedly preferred against the Plaintiffs.  John Greer and

Sal Sciandra both agree that the Board did not even discuss Joe Sapienza or Affordable Electric

during the September 12, 2018 hearing, and that the charges against the Plaintiffs were not

discussed by the Board until the October 10, 2018 hearing, which took place after the Plaintiffs'

Master-Electrician License was reinstated.  *See* Dkt. 25-13, ¶ 7; John Greer Affidavit, Davenport

Decl., Exhibit F.

27.     Mr. Sapienza retained the attorneys at Rupp Baase to seek and obtain

reinstatement of his Master-Electrician License.  Former Rupp Baase partner, Patrick McGuire,

Esq., met with Kevin O'Connor three days after the Plaintiffs' License was suspended to obtain

more information regarding the charges that were allegedly brought against the Plaintiffs as well

as the factual basis for those charges.  During that meeting, Attorney McGuire informed

Mr. O'Connor that his suspension of the Plaintiffs' License was in violation of Chapter 165 of the City of Buffalo Charter.  In response to Attorney McGuire's assertion, Mr. O'Connor disclosed that, "The Board has no idea what it is doing" and that, "The Board needs to appoint an attorney" to ensure compliance with the City of Buffalo's Charter.  Sapienza Aff., ¶¶ 25-27.

28.     Although Plaintiffs' Master-Electrician License was reissued approximately ten days after the suspension, Kevin O'Connor continues to tell City of Buffalo residents and other City of Buffalo electricians that the Plaintiffs' License is suspended, that Plaintiffs' "License is going down," and that City of Buffalo residents and electricians should stay away from Affordable Electric.  Sapienza Aff., ¶¶ 30-31; Dkt. 1, ¶ 107.

29.     On or around May 2, 2019, Kevin O'Connor accused Mr. Sapienza of allowing his employee at time, Richard Morgan, use Plaintiffs' Master-Electrician License to perform electrical services.  According to Mr. O'Connor, on April 29, 2019 between 9:45 a.m. and 10:45 a.m., he went to 78 Arthur Street and saw Richard Morgan "jumping out power at the premises."  Kevin O'Connor repeatedly stated that he had pictures of Richard Morgan performing electrical work at 78 Arthur Street, but to date these alleged pictures have not been provided to the Plaintiffs despite numerous requests and a FOIL request for the same.  Sapienza Aff., ¶¶ 35-39; Dkt. 1, ¶¶ 119-126.

30.     Despite having no evidence that Richard Morgan performed electrical services at 78 Arthur Street, Kevin O'Connor called the owner, Jacky Chanthanousone, and convinced her to file a complaint against Richard Morgan and the Plaintiffs.  The substance of that conversation was recorded by Mr. O'Connor, and he made the following defamatory statements against the Plaintiffs:

"My question is, you paid Richard Morgan half of the money down, and he did the actual work . . . and Affordable filed the actual permit, that's all I want to know . . . I'll get your power on very quickly."

"That's why I went out there personally and looked at this because I thought there were shenanigans being done and the law was being broken."

"How much did he charge you? . . . $2200 for a two-family service . . . [it could cost] anywhere from $1500 to twenty somethin' hundred . . . in your case . . . I would have thought it would have been on the lower end."

Dkt. 1, ¶ 128; Davenport Decl., Exhibits C and D.

31.     In December 2019, Kevin O'Connor took away City of Buffalo electrical inspectors' ability to release electrical services performed by the Plaintiffs.  *See* Dkt. 1, ¶ 222; Davenport Decl., Exhibit K, NMPC 11 ("Do not release until Kevin O'Connor approves").

32.     Plaintiffs filed an Article 78 proceeding requesting a writ of mandamus to compel the City of Buffalo's inspections at certain properties that were delayed in waiting for inspections due to Mr. O'Connor's December 2019 policy restricting inspectors who could file releases for inspections completed and approved.  *See* Dkt. 25-3.

33.     In retaliation for the Plaintiffs filing a legal proceeding, Kevin O'Connor issued a "direct order" which precluded City of Buffalo electrical inspectors from "inspecting or communicating with Affordable Electric."  To enforce Mr. O'Connor's unlawful policy, Commissioner Comerford suspended City of Buffalo Electrician Todd Walter for a week because he communicated with the Plaintiffs and performed an inspection of the Plaintiffs' work. *See* Davenport Decl., Exhibit B.

34.     Kevin O'Connor also has targeted the Plaintiffs for their use of jumpers to transition power.  However, the use of jumpers is an "industry standard."  National Grid representative for the City of Buffalo, Joseph McSweeney, testified during his deposition that he

is not aware of any other master electricians besides the Plaintiffs who were accused of using

jumpers to transition power in the City of Buffalo.  He testified as follows:

> Q:  In terms of specifically the city of Buffalo, do you recall having a city of Buffalo inspector call you to complain about an electrician using jumpers in the city of Buffalo for any electrical service besides Joe Sapienza or Affordable Electric?
>
> A:  No, I don't recall that.
>
> Q:  So you don't recall having any conversations with any city of Buffalo inspectors about electricians in the city of Buffalo using jumpers for service?
> A:  That's correct.
>
> Q:  Okay.  Just Affordable Electric and Joe Sapienza, right?
>
> A:  All that comes -- all that comes to mind.

Davenport Decl., Exhibit I, pp. 193-94; Exhibit M; Sapienza Aff., ¶¶ 40-42.

35.     In addition, Mr. McSweeney testified during his deposition that National

Grid would not investigate Mr. O'Connor's claims of whether the Plaintiffs used jumpers.

Rather, National Grid just shuts off the power immediately in response to such an alert from the

Chief Electrical Inspector:

> Q:  And you -- receiving that information and receiving those pictures from the inspector, you wouldn't be able to give your own input as to whether there is a safety concern warranting shutting off the power, correct?
>
> A:  Not an opinion that would influence the outcome.
>
> Q:  So if the city of Buffalo inspector took pictures of a service and said this is unsafe and told you that the pictures that they're sending to you show an unsafe service, you would shut off the power?
>
> A:  At the direction of the authority having jurisdiction, yes.
>
> Q:  And the authority having jurisdiction refers to the municipality, correct?
>
> A:  That's correct.

Q:      And if these pictures were taken from a city of Buffalo inspector, the
        authority having jurisdiction would refer to the city of Buffalo, correct?

A:      Yes.

Davenport Decl. Exhibit I, pp. 134-35.

36.     Knowing that National Grid will shut of the shut off the power

immediately in response to an alert of an alleged safety concern, Kevin O'Connor repeatedly has

reported the Plaintiffs' use of jumpers to National Grid, which causes the Plaintiffs' customers to

have their power shut off suddenly and without warning due to nothing more than the say-so of

Mr. O'Connor.  Kevin O'Connor does not report other master electricians who use jumpers to

transition power in the City of Buffalo, despite the use of jumpers being an "industry standard."

*See* Davenport Decl., Exhibit K, NMPC 7 ("City of Buffalo Chief Electrical Inspector Advised

Meter Channel is Unsafe"), NMPC 8 (e-mail from Kevin O'Connor to National Grid

representative that the Plaintiffs were "jumpering (sic) old 110 volt service to power new service

with main breaker" at 250 Benzinger Street, Buffalo, New York), NMPC 11; Exhibit M; Dkt. 1,

¶¶ 162-184; Sapienza Aff., ¶¶ 40-42.


Dated:  November 5, 2021
        Buffalo, New York

                            **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                            *Attorneys for Plaintiffs*


                            By:_____*s/Chad A. Davenport*_____
                                    R. Anthony Rupp III
                                    Chad A. Davenport
                             1600 Liberty Building, 424 Main Street
                             Buffalo, New York  14202
                             (716) 854-3400
                             rupp@ruppbaase.com
                             davenport@ruppbaase.com

**TO:**   **CITY OF BUFFALO**
Corporation Counsel
Attorneys for Defendants
Robert Quinn, Esq.
65 Niagara Square, 11th Floor
Buffalo, New York 14202
(716) 851-4317