UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH SAPIENZA, and AFFORDABLE
ELECTRICAL SERVICES BY SAPIENZA
ELECTRIC, INC.,

                  Plaintiffs,

v.

THE CITY OF BUFFALO, KEVIN O'CONNOR,
JAMES COMERFORD, JR., and SAL
SCIANDRA, *et al.*

                  Defendants.

**REPORT AND RECOMMENDATION**

1:20-cv-0634-JLS-JJM

_____

Before the court are defendants' motions to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and (c) and for summary judgment pursuant to Rule 56 [25],[1] and plaintiffs' cross-motion for partial summary judgment pursuant to Rule 56 [34], which have been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [29]. Having reviewed the parties' submissions [25, 26, 34, 35, 44, 48] and heard oral argument on February 1, 2022, I recommend that the motions be granted in part and denied in part.

## THE COMPLAINT AND PLAINTIFFS' AGREEMENT TO DISMISS CERTAIN DEFENDANTS AND SPECIFIC CAUSES OF ACTION

Plaintiffs Joseph Sapienza and Affordable Electrical Services by Sapienza Electric, Inc. commenced this action pursuant to 42 U.S.C. §§1981, 1983, 1985, 1986, and 1988 alleging violations of their rights under the First and Fourteenth Amendments of the United States Constitution, and under state law pursuant to 28 U.S.C. §13679(a) following the

---

[1]     Bracketed references are to CM/ECF docket entries. Unless otherwise noted, page references are to CM/ECF pagination.

September 2018 suspension of Sapienza's master electrician's license in the City of Buffalo.

Complaint [1] ¶¶ 1, 268-390. Plaintiffs filed this action on May 29, 2020.  Id.  They asserted

eleven claims for relief for violations of the First and Fourteenth Amendments pursuant to 42

U.S.C. §1983, and for various violations of state law:

1. Equal protection in violation of his rights under the Fourteenth Amendment (id. ¶¶ 268-81);

2. Substantive due process, in violation of his rights under the Fourteenth Amendment (id. ¶¶ 282-96);

3. Retaliation for exercising his First Amendment rights, in violation of the First and Fourteenth Amendments (id. ¶¶ 297-305);

4. Violation of the privileges and immunities clause, in violation of the Fourteenth Amendment (id. ¶¶ 306-15);

5. Procedural due process, in violation of the Fourteenth Amendment (id. ¶¶ 316-23);

6. Conspiracy to violate plaintiffs' constitutional rights, in violation of the Fourteenth Amendment (id. ¶¶ 324-34);

7. Policy, custom, and practice of defendants and failure to supervise and train, in violation of the Fourteenth Amendment (id. ¶¶ 335-45);

8. Defamation, in violation of New York state law (id. ¶¶ 346-60);

9. Tortious interference, in violation of New York state law (id. ¶¶ 361-69);

10. Intentional infliction of emotional distress, in violation of New York state law (id. ¶¶ 370-81); and

11. Negligent infliction of emotional distress, in violation of New York state law (id. ¶¶ 382-90).

Plaintiffs now agree that their second, fourth, sixth, tenth, and eleventh claims

should be dismissed.  Plaintiffs' Memorandum of Law [34-7] at 5, n. 4.  In addition, plaintiffs

agreed that any claims asserted against the City of Buffalo Examining Board of Electricians, the

Department of Permits and Inspection Services, and John Doe defendants should also be

dismissed. Id. at 2, n. 1.  Accordingly, I recommend that the court dismiss the Complaint in its entirety as to these defendants, and claims 2, 4, 6, 10, and 11 as to the remaining defendants, with prejudice.  Defendants John Greer, National Grid and Joseph McSweeney were dismissed by stipulation. Stipulations of Dismissal [21, 42]; *see also* Text Orders [22, 43].

The remaining defendants with respect to claims 1, 3, 5, and 7-9 are the City of Buffalo; Kevin O'Connor, individually and in his capacity as Chief Electrical Inspector for the City of Buffalo; Sal Sciandra, individually and in his capacity as a member of Buffalo's Examining Board of Electricians; and James Comerford, Jr., individually and in his capacity as a member of Buffalo's Department of Permit and Inspection Services.

## FACTUAL BACKGROUND:  THE REMAINING DEFENDANTS AND CLAIMS

Plaintiff Sapienza is an electrician who holds a master electrician license issued by the City of Buffalo Examining Board of Electricians.[2]  Plaintiffs' Statement of Facts [35], ¶3. This action primarily involves an incident that occurred in 2018 concerning work that Sapienza's company, plaintiff Affordable Electrical Services by Sapienza Electric, Inc., performed at 49 Cortland Avenue.  Complaint [1] ¶¶ 92-107.  Defendant Kevin O'Connor, the City of Buffalo's Chief Electrical Inspector (id. ¶ 65), called Sapienza on or about August 31, 2018 and informed

---

[2]      Both plaintiffs and defendants refer throughout their papers to "plaintiffs" co-extensively. Plaintiffs' interests, however, are not the same.  Both parties identify the master electrician license as belonging to Sapienza, and not to Affordable Electric.  *See* Plaintiffs' Statement of Facts [35], ¶ 3 (plaintiffs "do not dispute" defendants' assertion that "[p]laintiff, Joseph Sapienza was issued a Master Electricians License by the City of Buffalo Examining Board of Electricians on or about September 13, 2013", citing Exhibit C [25-4] at 47 to the Declaration of Robert E. Quinn (the "Quinn Declaration") [25-1].  The referenced exhibit is a copy of a Master Electrician License, dated September 13, 2013, identifying the "Applicant Name" as "Joseph Sapienza".  Rather than an "applicant", Affordable Electric is identified under the category "Business Name" on the license.  Exhibit C to Quinn Declaration [25-4] at 47.  Moreover, the September 13, 2018 Notice of Violation providing notification that the license was suspended is addressed to "Joseph Sapienza c/o Affordable Electric Services by Sapienza", rather than to Affordable Electric.  Notice of Violation [34-2] at 12.  Accordingly, I treat Sapienza, and not Affordable Electric, as the license holder.

him that the City's Board of Electricians "commenced an investigation into charges that were allegedly preferred against plaintiffs." <u>Id.</u> ¶ 92. O'Connor told Sapienza he was scheduled to appear before the Board. <u>Id.</u> ¶ 93. Sapienza "thought that [he] heard Mr. O'Connor say that the hearing before the Board was scheduled for September 26, 2018". Affidavit of Joseph Sapienza, sworn to November 5, 2021 (the "First Sapienza Affidavit") [34-4] ¶ 22. Sapienza received a phone call from O'Connor on September 12, 2018 informing him that his license was suspended. <u>Id.</u> ¶ 23. After Sapienza and his attorney met with O'Connor, his license was reinstated. <u>Id.</u> ¶ 29. The suspension lasted 10 days. <u>Id.</u> ¶ 28.

In addition, Sapienza claims that O'Connor defamed him during a telephone call with another city resident concerning electrical services performed at 78 Arthur Street. *See* Fist Sapienza Affidavit [34-4] ¶¶ 35-39. He also claims O'Connor retaliated against him for criticizing defendants "for their lack of a jumper program", which "would allow National Grid to recognize jumper systems inspected and approved by City of Buffalo electrical inspectors" and eliminate a significant delay in providing electrical service to customers. *See* Complaint [1] ¶¶ 71-90, 298.

## DISCUSSION

### I.     Summary Judgment Standard

Although defendants cite Rule 12(b)(6) and Rule 12(c) as a basis for their motion, in addition to Rule 56 (*see* Notice of Motion [25]), this motion "must be treated as one for summary judgment under Rule 56." Rule 12(d). Here, both defendants and plaintiffs have moved for summary judgment under Rule 56 and submitted materials outside the pleadings, which I decline to reject. *See* <u>Lively v. WAFRA Inv. Advisory Group, Inc.</u>, 6 F.4th 293, 302 (2d Cir 2021) ("Rule 12(c) has limited usefulness today in light of both Rule 12(b)(6) and Rule

12(d), which requires a court to convert a motion under Rule 12(b)(6) or 12(c) into a motion for summary judgment whenever 'matters outside the pleadings are presented to and not excluded by the court.' Rule 12(d)").

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

Once the moving party has met its burden, "the burden then shifts to the non-moving party to demonstrate that, as to material fact, a genuine issue exists." Fry v. Hartford Insurance Company, 2011 WL 1672474, *2 (W.D.N.Y. 2011). "[T]he plaintiff cannot meet this burden through reliance on unsupported assertions. Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor. The motion will not be defeated merely on the basis of conjecture or surmise." Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

## II.        Timeliness of Plaintiffs' Cross-Motion

As an initial matter, I address defendants' request to strike plaintiffs' cross-motion for summary judgment because it was not timely filed. I agree that this court has the discretion to strike plaintiff's cross-motion, but I decline to do so here.

> "Even though labeled as a cross-motion, the deadline for filing dispositive motions was clear: November 5, 2010. Fry's motion is a dispositive motion and, therefore, should have been filed on or before that date. Federal Rule of Civil Procedure 16 permits an extension to the deadline set by the Court, but only upon application and for good cause. Fed.R.Civ.P. 16(b)(4). No such application was made, and no good cause has been shown. Therefore, beyond just striking the exhibits, the Court also grants Hartford's application to strike Fry's motion for summary judgment, and as a result, Fry's cross-motion for summary judgment is denied."

Fry, 2011 WL 1672474 at *3; *see also* Defendants' Responding Memorandum of Law [44-2] at 7. Here, the deadline for filing dispositive motions was September 17, 2021. *See* Case Management Order [18]. Plaintiffs filed their cross-motion on November 5, 2021. *See* Motion for Summary Judgment [34]. I am, however, able to factor into my assessment of good cause "the efficiency gained by addressing the summary judgment issues simultaneously", especially "with respect specifically to motions for leave to file an untimely cross summary judgment motion". United States of America v. Cohan, 2012 WL 4758142, *2 (D. Conn. 2012). Because I find that it would be more efficient for this court to address both parties' motions presently, rather than require additional proceedings on issues that may be resolved now, I recommend that this court consider plaintiffs' late-filed cross-motion along with defendants' timely filed motions.

> "Where a court determines that it would be more efficient - not just for the parties but particularly for the court - to consider a belated motion for summary judgment rather than strike it, the Rule 16 'good cause' requirement does not stand in the way".

Cornelius v. Independent Health Association, Inc., 2015 WL 13836748, *2 (W.D.N.Y. 2015).

Based upon this recommendation, I address both parties' motions below.

### III.        Plaintiff Sapienza Is Entitled to Summary Judgment on his Procedural Due Process Claim

Plaintiffs asserted this claim against O'Connor, Sciandra, and Comerford. Complaint [1] at 48.  The Due Process Clause of the Fifth Amendment imposes procedural "constraints on governmental decision which deprive individuals of 'liberty' or 'property' interests".  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  Id. at 333.  Determining whether the government has satisfied the requirements of due process prior to a deprivation of property or liberty requires consideration of three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Id. at 335; see also Spinelli v. City of New York, 579 F.3d 160, 170 (2d Cir. 2009).  "Even a brief and provisional deprivation of property pending judgment is of constitutional importance."  Spinelli, 579 F.3d at 174.

Application of the Mathews factors here demonstrates that Sapienza is entitled to summary judgment on his claim that defendant O'Connor violated his right to procedural due process before suspending his master electrician's license. First, Sapienza undeniably had a protected property interest in the master electrician license, which enabled his business to perform electrical work within the City.  See City of Buffalo Charter §165-2(A) ("[n]o person shall engage in or conduct the business of a master electrician in the city of Buffalo until such person shall apply for and obtain a license to engage in such business as herein provided").  A

license to do business within a particular municipality is a protected interest. "[O]nce the government has granted a business license to an individual, the government cannot deprive the individual of such an interest without appropriate procedural safeguards." Id., 579 F.3d at 169 (internal quotations and alterations omitted). "Moreover, the Supreme Court has repeatedly recognized the severity of depriving someone of his or her livelihood." Nnebe v. Daus, 931 F.3d 66, 84 (2d Cir. 2019) (internal quotations and alterations omitted) (citing cases).

Second, there is a high risk of erroneous deprivation of an interest in a master's electrician license through the procedure actually used here – a brief phone call that did not state the actual date of the meeting Sapienza was to attend[3], during which O'Connor and Sapienza may or may not have discussed the reason he was to attend, and during which Sapienza was not warned that failure to attend could result in suspension of his license. First Sapienza Affidavit [34-4] ¶¶ 22-23; Affidavit of Kevin O'Connor, sworn to September 14, 2021 (the "First O'Connor Affidavit") [25-10] ¶ 46. It is obvious that a written notice containing such information would be of significant value to both the master electrician, who would then have an opportunity to address the charges against him, and to the City, which could then ensure attendance of the master electrician at the correct meeting and prompt resolution of any issues. "[D]ue process notice contemplates specification of acts or patterns of conduct, not general,

---

[3]     Although there appears to be a discrepancy in O'Connor's and Sapienza's recollections of whether O'Connor mentioned a specific date during the phone call, O'Connor states in his Affidavit, which I accept as true for purposes of this motion, that he "advised Mr. Sapienza that he was required to appear before the Examining Board at the next regularly scheduled monthly meeting in September". First O'Connor Affidavit [25-10], ¶ 46. O'Connor does not state that he told Sapienza the actual date of that meeting. He explains in the next paragraph, "[b]y this point in time, Mr. Sapienza had been to multiple Board meetings for various reasons, and he was aware of when and where they were held on a regular basis." Id. ¶ 47. O'Connor does not assert in his second affidavit that he specifically told Sapienza the date of the meeting: "I advised Mr. Sapienza that he was required to appear at the next regularly scheduled Board meeting in September, which was being held on September 2, 2018". Second O'Connor Affidavit, sworn to November 29, 2021 [44-1], ¶ 57. However, even if O'Connor had specifically told Sapienza the actual date of the September meeting, his verbal notice would still be insufficient to satisfy due process.

conclusory charges unsupported by specific factual allegations.  The degree of required specificity also increases with the significance of the interests at stake.  Here, these interests, implicating the practice of one's chosen profession are substantial."  Spinelli, 579 F.3d at 172 (internal quotations and citations omitted).

Defendants' arguments to the contrary are not persuasive.  They argue first that Sapienza's failure to appear at the hearing as verbally instructed by O'Connor operated as a knowing and voluntary waiver of his right to a pre-deprivation hearing.  *See* Defendants' Memorandum of Law [25-17] at 14 (*citing* Smith v. Fischer, 803 F.3d 124 (2d Cir. 2015)). However, Smith is readily distinguishable.  There, the plaintiff, a prison inmate, claimed violation of his right to procedural due process after he was disciplined for attacking another inmate.  Id. at 126.   The plaintiff argued that he was not informed of his right to attend his disciplinary hearing or the consequences of his failure to attend.  Id.   The district court found that plaintiff had waived his right to attend his hearing, and the Second Circuit agreed, concluding:

> "Smith's conduct here constituted a knowing and voluntary waiver of his right to attend his disciplinary hearing.  He received notice that a hearing on his charges would be held, met with an assistant, and requested inmate Watson as a witness.  He was conducted to the hearing room at the scheduled time.  He then asked to leave the room and refused to participate.  He therefore had an opportunity to attend. (Even then, Officer Wolczyk sent guards to Smith's cell to ask whether he wished to call Watson or ask any questions, and Smith declined.)"

Id. at 127-28.  Here, there are no such facts indicating that plaintiffs knew of the hearing or had the opportunity to participate in it.

Further, defendants argue that this court "must take into account that limited circumstances, time period, and the relative ease with which the alleged 'suspension' was

resolved". Defendants' Responding Memorandum of Law [44-2] at 9. This argument, however, "is a non-sequitur. [Plaintiff's] eventual success did not result from the city's affording her due process, but despite its absence." Spinelli, 579 F.3d at 172.

Finally, the City's interests would not be curtailed by providing written notice prior to a hearing. "[E]xigent circumstances necessitating very prompt action" may be "sufficient to justify the City's failure to provide [plaintiff] with pre-deprivation notice or a hearing". Spinelli, 579 F.3d at 170. However, defendants have brought no such circumstances to my attention, nor does this record support a conclusion that exigent circumstances existed. Sapienza stated that O'Connor spoke with him about the permit issue at 49 Courtland Ave. in June 2018. First Sapienza Affidavit ¶¶ 18, 19-20. O'Connor's phone call with Sapienza informing him to attend the next Examining Board of Electricians meeting took place on August 31, 2018. Id. ¶ 22. O'Connor informed Sapienza by phone on September 12, 2018 that his license was suspended. Id. ¶ 23.

Defendants do not identify any reason why O'Connor could not have followed up on the August 31, 2018 phone call with written notice of the meeting, or why providing such notice would have been burdensome. There was adequate time between O'Connor's August 31, 2018 phone call and the September board meeting to send a written notice. City Charter provisions strongly suggest that notice must be given prior to any suspension of a license:

> "No individual, partnership or corporation shall lend, rent or in any manner transfer or assign his or its license name and/or license number to any other individual, partnership or corporation; nor shall any individual, partnership or corporation make use of a license name or license number which is not actually his or its own. **Every such license may, after due notice to the holder thereof and opportunity to be heard, be suspended** or revoked **by the Commissioner of Permit and Inspection Services upon recommendation of the Board for** failure or refusal of the licensee to comply with the City Code and National Electrical

> Code requirements or for **other cause deemed sufficient by the Board**."

City Charter §165-13(A) (emphasis added).  Finally, O'Connor did not suspend Sapienza's license in June 2018 when he learned of the issue at 49 Courtland, suggesting that no emergency conditions existed that would require immediate suspension of the license.

All three <u>Mathews</u> factors favor Sapienza.  Accordingly, I find that the notice provided to Sapienza prior to the suspension of his master's electrician license was insufficient to satisfy his right to procedural Due Process.  I therefore recommend that this court grant summary judgment on this cause of action in Sapienza's favor against O'Connor, but deny the motion as to Affordable Electric.

Although the Complaint also alleges this cause of action against defendants Sciandra and Comerford, plaintiffs have presented no evidence that either was personally involved in this violation.  To be held liable for a constitutional violation pursuant to 42 U.S.C. §1983, a plaintiff must allege the personal involvement of the defendant and causal relationship between the defendants' actions (or omissions) and the constitutional violation.  <u>Townes v. City of New York</u>, 176 F.3d 138, 146 (2d Cir. 1999) ("a § 1983 action, like its state tort analogs, employs the principle of proximate causation"); <u>Breeden v. City of New York</u>, 2014 WL 173249, *8 (E.D.N.Y. 2014) ("[t]o succeed on a § 1983 claim, a plaintiff must allege that each defendant was directly and personally involved in the purported unlawful conduct").  Finally, to the extent that the Complaint levies this cause of action against the City by naming the individual defendants in both their individual and official capacities[4], plaintiffs have presented no evidence

---

[4]     This cause of action was asserted against O'Connor, Sciandra, and Comerford, in addition to other defendants against whom plaintiff agrees the Complaint should be dismissed: Department of Permit & Inspection Services, City of Buffalo Examining Board of Electricians, John Greer, and John Does. Complaint [1] at 48.

that O'Connor's actions were done pursuant to a City policy or procedure. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978).  To the contrary, plaintiffs argue that O'Connor's actions violated City procedure. *See* Plaintiffs' Memorandum of Law [34-7] at 14 ("the [City] Charter provides that the Board is *required* to hold a hearing or trial concerning charges preferred against an individual holding a master-electrician license *before* suspending that individual's license").  Therefore, I further recommend that this court grant those defendants' motion for summary judgment on this cause of action.

Finally, this recommendation does not dispose of this issue entirely:

> "Although [plaintiff's] license has been reinstated . . . her due process claim nevertheless remains a live controversy.  Because she never received the process that she was due, Defendants must still answer for any damages they may have caused with their suspension of her license without due process.  The district court must permit [plaintiff] to prove her damages, by computing the loss from the time the City should have provided a prompt post-deprivation hearing until December 5, 2001, when the suspension was lifted".

Spinelli, 579 F.3d at 175 (internal quotations, citations, and alterations omitted). I therefore recommend that this court permit Sapienza an opportunity to prove his damages, by further submissions to the court documenting his loss from the time the City suspended his license to the time it was reinstated.

IV.     **Plaintiffs Failed to Present Evidence to Support a Cause of Action for a Violation of Equal Protection or Retaliation under the Constitution or for any State Law Cause of Action**

For the reasons stated below, I agree that plaintiffs have failed to present evidence to the court of any other constitutional violation, or for any state law cause of action. I therefore recommend that the court grant defendants' motion with respect to plaintiffs' remaining claims. I address each below.

A.     **Equal Protection Claims under Selective Enforcement or Class-of-One Theories**

Plaintiffs asserted this claim against all defendants. "A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated." Church of American Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 210 (2d Cir. 2004). A "selective enforcement" claim is proper where:

> "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person."

Zahara v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995); *see also* Lilakos v. New York City, 808 Fed. Appx. 4, *8 (2d Cir. 2020) (Summary Order).[5] I agree with defendants that plaintiffs' equal protection claim fails because neither the Complaint nor their motion papers identify any similarly situated master electricians that the City treated differently. *See* Defendants' Memorandum of Law [25-17] at 11-12; Defendants' Reply Memorandum of Law

---

[5]     Plaintiffs abandon in their responsive papers any "class-of-one" equal protection claim and focus on the selective-enforcement claim. *See* Plaintiffs' Memorandum of Law [34-7] at 26. I address, therefore, only the selective enforcement theory of an equal protection claim.

[44-2] at 12-13.  "A selective enforcement claim requires, as a threshold matter, a showing that

the plaintiff was treated differently compared to others similarly situated.  <u>Church of the</u>

<u>American Knights</u>, 356 F.3d at 210.

   In response to defendants' motion, plaintiffs argue that O'Connor "issued an

informal directive forbidding other City of Buffalo inspectors from inspecting the Plaintiffs'

work" and that Mr. O'Connor repeatedly called National Grid to report the Plaintiffs' use of

jumpers, which causes National Grid to shut off the power at properties serviced by the

Plaintiffs".  Plaintiffs' Memorandum of Law [34-7] at 25.  In support of these assertions,

plaintiffs reference paragraphs 31 through 35 of his Statement of Facts [35].  In those

paragraphs, however, plaintiffs do not identify any similarly situated master electricians.  They

generally allege that plaintiffs are "roughly equivalent" "to other master electricians licensed in

the City of Buffalo who use jumpers or forget to file for and/or obtain a permit before

performing electrical services" without identifying any other specific master electrician licensed

in the City of Buffalo to which these descriptions might apply.  These general assertions fail to

satisfy plaintiffs' burden.

   In <u>Church of American Knights</u>, the American Knights applied for a parade

permit from the New York Police Department.  <u>Id.</u> at 200.  After reviewing the application, the

police notified the American Knights that its plan to wear masks during their parade would

violate New York's anti-mask statute incorporated into the penal law, and denied the permit.  <u>Id.</u>

at 200-01.  The American Knights "sought a preliminary injunction to force the police

department to allow its members to demonstrate while wearing masks".  <u>Id.</u> at 201.  In support of

its selective enforcement claim, the American Knights identified several other groups that

participated in other events and whose participants covered their faces, including Iranian students

- 14 -

and pro-Palestinian protestors who protested at various times within the City.  Id. at 210.  The

court agreed with defendants that "there was no differential treatment - a prerequisite to selective

enforcement - because in the situations cited, the participants did not provide advance warning of

their intent to wear masks".  Id.  The court concluded:

> "The American Knights applied to the New York Police
> Department for a permit, and specifically informed the
> police that they would be wearing masks in violation of
> New York Penal Law § 240.35(4).  The police department
> refused the American Knights a permit.  The American
> Knights has not suggested, much less shown, that any other
> group was granted a permit in such circumstances.
> Plaintiffs have therefore failed to establish a case of either
> viewpoint discrimination or selective enforcement."

Id. at 211.  Here, plaintiffs' claim fails for the same reasons, as they have identified with even

less specificity others whom they claim are similarly situated.

Accordingly, I recommend that this court grant defendants' motion with respect to

plaintiffs' equal protection claim.

**B.     Claim for Retaliation for Exercising his First Amendment Rights**

Plaintiffs asserted this claim against all defendants.  To satisfy the elements of a

claim for First Amendment retaliation, a plaintiff must show: "(1) he has a right protected by the

First Amendment; (2) the defendant's actions were motivated or substantially caused by his

exercise of that right; and (3) the defendant's actions caused him some injury."  Dorsett v.

County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

Plaintiffs allege in their Complaint that "[b]ut for Defendants' retaliatory animus

towards Plaintiffs' speech criticizing Defendants for their lack of a Jumper Program, Defendants

would not have suspended Mr. Sapienza's master electrician license."  Complaint [1], ¶ 298.

Defendants argue that this claim should be dismissed because plaintiffs' Complaint fails to plead

facts sufficient to state a cause of action with respect to all three elements.  Defendants'

Memorandum of Law [25-17] at 14.  In response, plaintiffs appear to abandon the theory

proposed in their Complaint, and argue:

> "For purposes of the Plaintiffs' First Amendment retaliation claim,
> it is believed that Mr. O'Connor's hostility towards the Plaintiffs is
> due at least in part due to the Plaintiffs' commencement of an
> Article 78 proceeding, which requested a writ of mandamus
> compelling the City of Buffalo to perform inspections of electrical
> services performed by the City of Buffalo.  Shortly after the
> Plaintiffs filed the petition commencing the Article 78 proceeding,
> Kevin O'Connor issued an informal directive prohibiting other
> City of Buffalo electrical inspectors from inspecting the Plaintiffs'
> work. . . . In support of and in furtherance of Mr. O'Connor's
> unlawful directive, Commissioner Comerford suspended City of
> Buffalo electrical inspector, Todd Walter, for one week without
> pay because Mr. Walter 'disobeyed' Kevin O'Connor's 'direct
> order' not to perform inspections of the Plaintiffs' electrical work."

Plaintiffs' Memorandum of Law [34-7] at 29.  Defendants argue that both theories fail because

plaintiffs offer "no actual evidence . . . in support of them" and because the timing of alleged

retaliation is not sufficiently close to the speech plaintiffs claim is protected by the First

Amendment as "concerns and complaints about government officials".  Defendants' Responding

Memorandum of Law [44-2] at 15; *see also* Plaintiffs' Memorandum of Law [34-7] at 29.

I agree that plaintiffs failed to meet their burden to support their claims with

evidence from the record.  "[T]he nonmoving party, in order to defeat summary judgment, must

come forward with evidence that would be sufficient to support a jury verdict in his favor. The

motion will not be defeated merely on the basis of conjecture or surmise."  Goenaga, 51 F.3d at

18.  For example, plaintiffs submitted to the court a July 17, 2018 letter concerning the "jumper

systems" that Erie County Legislator Thomas A. Loughran wrote to individuals at National Grid.

July 17, 2018 Loughran Letter [34-3] at 225.  In addition, Sapienza's affidavit identifies a

conversation he had with O'Connor concerning the letter (First Sapienza Affidavit [34-4] ¶ 17),

but does not identify any statements that he made concerning that program to either National Grid or the City of Buffalo.  Because Sapienza has not identified any speech, let alone any speech protected by the First Amendment as a concern or complaint about government officials, his claim must fail.

Plaintiffs' claim that filing the Article 78 proceeding was related to the City's unofficial policy prohibiting other inspectors from inspecting his work must also fail.  Even if I were to assume that plaintiffs' submission contained sufficient proof that such a directive occurred, his claim nevertheless fails because it makes no temporal sense.  Plaintiffs filed their Article 78 proceeding on January 31, 2020.  *See* Notice of Petition [25-3] at 12 ("[r]eceived NYSCEF: 01-31-2020").  In support of this theory, plaintiffs point to the suspension of electrical inspector Todd Walter and cite to the letter referencing that suspension.  *See* Plaintiffs' Memorandum of Law [34-7] at 29, underline citing Davenport Declaration, Exhibit B.  That letter, however, is dated June 17, 2019: seven months *prior* to the date plaintiffs filed the Article 78 proceeding.  For these reasons, I recommend that this court grant defendants' motion and dismiss plaintiffs' First Amendment retaliation claims.

### C.    Claims for Municipal Liability under *Monell*

Plaintiffs' claim against the City of Buffalo for that it "developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in Buffalo, which caused the violation of Plaintiffs' rights" fails for similar reasons.  *See* Complaint [1] ¶ 336.  Defendants argue in their motion that plaintiffs' Complaint "does not contain specific factual allegations tending to support the claim that the allegedly unconstitutional acts were due to a policy, practice, and/or custom.  On this record, without more, the Plaintiffs' vague and conclusory allegations do not suffice to state a cause of action

with respect to municipal liability under §1983."  Defendants' Memorandum of Law [25-17] at

19.  In response, plaintiffs argue that the actions of "the City of Buffalo's Chief Electrical

Inspector, the Commissioner for DPIS, and the City of Buffalo's Board of Examining

Electricians" "are fairly attributable to the City of Buffalo because the City grants them the

decision-making authority to grant [or] deny license to perform the work of a master electrician

and to regulate the practice of all licensed master electricians in the City."  Plaintiffs'

Memorandum of Law [34-7] at 31. Plaintiffs fail to make any citation to the record, or to identify

any actual evidence, to support its claims, nor do they discuss in their responding papers any

specific policies, practices, or customs.  *See* id. at 29-31.  For this reason, they have failed to

satisfy their burden to  "come forward with evidence that would be sufficient to support a jury

verdict in [their] favor."  Goenaga, 51 F.3d at 18.

> ### D.    Defamation

Plaintiffs assert this cause of action against O'Connor.  The elements of a

defamation claim under New York law are:

> "(1) a defamatory statement of fact; (2) regarding the plaintiff; (3)
> published to a third party; (4) that is false; (5) made with the
> applicable level of fault; (6) causing injury; and (7) not protected
> by privilege."

Examworks, Inc. v. Soltys, 2017 WL 4712206, *7 (W.D.N.Y. 2017).  Where a plaintiff fails to

identify "nonconclusory factual allegations relating to the publication of a false statement about

Plaintiff or Defendants' alleged involvement therein", dismissal of a defamation claim is

appropriate.  Wekenmann v. Erie County Sheriff's Office, 2021 WL 22540, *5 (W.D.N.Y.

2021).

Plaintiffs' claim for defamation against O'Connor focuses primarily on his telephone conversation with a City of Buffalo resident concerning work performed at her residence:

>347.    During his phone conversation with Jackie Chanthanousone, Kevin O'Connor accused Plaintiffs of criminal wrongdoing based on his assumption that former Affordable Electric employee, Richard Morgan, performed electrical services without the supervision of Mr. Sapienza.

>348.    During his phone conversation with Jackie Chanthanousone, Kevin O'Connor accused Plaintiffs of overcharging Ms. Chanthanousone for the electrical services performed at her property, without ever performing an inspection himself of the electrical services that Plaintiffs performed.

>349.    After Mr. Sapienza's master electrician license was reinstated, Kevin O'Connor told City of Buffalo electricians, residents, and Local 41 members that Mr. Sapienza no longer has his master electrician license, that "Joe [Sapienza's] license is going down" and to stay away from Affordable Electric.

>* * *

>351.    Kevin O'Connor, personally and in his official capacity as Chief Electrical Inspector for the City of Buffalo, made the above articulated defamatory statements against Plaintiffs implying them to be alleged facts.

>* * *

>354.  Kevin O'Connor's statements made to Jackie Chanthanousone were made without any evidence to support Mr. O'Connor's false belief that Richard Morgan performed electrical services without supervision from Mr. Sapienza.

Complaint [1] ¶¶ 347-49, 351, 354.

A recording of defendant O'Connor's side of a conversation, purportedly with the complaining resident, is included with plaintiffs' papers. *See* Receipt of Manual Filing [37] ("re [34] Motion for Summary Judgment - Flashdrive of Exhibit D").  Although plaintiffs transcribe

some of the conversation in their Statement of Facts ([35], at 11, ¶ 30), portions were left out.  A

full transcript of the recording follows (ellipses indicate a gap in the conversation where

someone else is presumably speaking):[6]

> Okay, so my question is, you paid Richard Morgan half of the
> money down and he did the actual work. And I want a copy of that
> . . . and Affordable filed the permit.  That's all I want to know.
> File it to me and I'll get your power on very quickly here but I just
> want to get this resolved.  This all I want to get resolved.  . . .
>
> And what's your name again? Jackie what's your last name?  . . .
> Oh no wonder, good thing good thing you spelled that.  I was
> never gonna get that right the first time.  And don't take it per --
> I'm not making fun of you.  Just some names are hard.  So, that's
> all I wanted to know.
>
> That's why I went out there personally and looked at this because I
> thought there was shenanigans being done and the law was being
> broken.  So you didn't break the laws, you did everything fine. . . .
>
> So how much money did you give him down anyways? . . .  You
> gave him 1100 down?  How much did he charge you?  . . . 2200
> for a two family service?  . . . Okay, that's all I want to know.  . . .
> Naaah, it depends, it depends on how hard the service is, it
> depends.  Some ones they gotta run more cables, some are harder
> to get at.  Somewhere, anywhere between 15-hundred and 20-
> some-hundred, but it depends.  I wasn't out there, it depends.  In
> your case they went in the back hallway I would of thought it
> would be on the lower end, but, uhh, it depends on where Grid tells
> them to make the attachments and everything else, so, uh, that's
> what's going on.
>
> So, okay?  Just send that, send that information to my phone please
> . . . [recites phone number]  Yeah I wanna just wanna see what that
> contract looks like.  Thank you.  Bye now.

Id.

    Defendants argue that plaintiffs' claim fails because the statements complained of

were not set forth with particularity, were opinions and not statements of fact, and were protected

---

[6]  Transcription prepared by court staff.

under a qualified privilege because they were related to "electrical licensing, permitting, inspections, and regulation thereof".  Defendants' Memorandum of Law [25-17] at 20-21. Further, defendants argue that the statements were not made about plaintiffs, but about the complaint the city resident made against non-party Richard Morgan.  Defendants' Responding Memorandum of Law [44-2] at 24.  Plaintiffs argue that no qualified privilege applies, the statements were not opinions, were unprotected statements related to criminal or illegal activities, and were not shown by defendants to be true.  Plaintiffs' Memorandum of Law at 37-38.

I agree with defendants that the statements made by O'Connor in the recording were not about plaintiffs.  The only mention of any plaintiff in the recorded call was a confirmation that "Affordable filed the permit".  The remainder of the conversation focused on Morgan, as he accepted the deposit and performed the work complained of.  In addition, plaintiffs' assertions about the nature of O'Connor's statements during the call are incorrect. O'Connor's statements concerning the amount charged did not include any indication that the resident was overcharged.  He expressed an opinion, "[i]n your case they went in the back hallway I would of thought it would be on the lower end", but couched it both before and after with language that made it clear the cost of any service "depends" upon a number of factors, including how difficult the service is to run, how many cables are required, and requirements dictated by "Grid", the utility.  O'Connor, it appears, declined to offer an opinion as to the cost of the service cited to the resident, because "[he] wasn't out there".  Finally, O'Connor placed the cost of the resident's service within the range of costs he might expect, "anywhere between 15-hundred and 20-some-hundred, but it depends".  Even if these statements could somehow be construed to be related somehow to plaintiffs, they are not statements of fact.

Finally, none of the alleged statements referred to in paragraph 349 of the Complaint identify any of the electricians, residents, or Local 41 members to whom the alleged statements were told, nor do plaintiffs cite any evidence that demonstrates these statements were made.

Accordingly, I recommend that this cause of action be dismissed.

**E.      Intentional Interference with Contract**

Plaintiffs assert this cause of action against all defendants.  The elements of an intentional interference with contract claim under New York law are:

> "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."

Mastercraft Decorators, Inc. v. Orlando, 356 F.Supp.2d 269, 266 (W.D.N.Y. 2018).  Where a plaintiff "fails to identify any specific customer contracts with which Defendants interfered", dismissal is appropriate.  Plaintiffs' Complaint alleges:

> 362.    Plaintiffs entered into agreements with City of Buffalo residents and property owners for electrical services.
>
> 363.    Defendants have repeatedly interfered with Plaintiffs' contracts with City of Buffalo residents and property owners by shutting off the power at properties and/or failing to inspect and release electrical services performed by the Plaintiffs in a timely manner.
>
> 364.    Defendants knew, or should have known, that Plaintiffs had in place contracts with the individuals at the properties where Defendants shut off the power and/or failed to inspect and release electrical services performed by the Plaintiffs in a timely manner.

Complaint [1], ¶¶ 362-64.  Defendants argue that plaintiffs' tortious interference claim should be dismissed "because Plaintiff has failed to specif[y] a customer or contract which was affected".

Defendant's Memorandum of Law [25-17] at 22.  Plaintiffs counter that "the evidence before the Court demonstrates that the City Defendants tortiously interfered with the Plaintiffs' prospective and existing business relations" by: "calling the Plaintiffs' customers to convince the customer to file a complaint against them; issuing and enforcing directives restricting City of Buffalo inspectors who were permitted to inspect and communicate with the Plaintiffs, and telling the Plaintiffs' customers that their Master-Electrician License was suspended even after it had been reinstated." Plaintiffs' Memorandum of Law [34-7] at 34-35.

I agree with defendants that plaintiffs have not plead, or identified, any facts to support these conclusory allegations.  Plaintiffs do not identify in their motion papers any particular contract interfered with, or customer affected.  They cite paragraphs 28-35 of their Statement of Facts, which in turn refer to paragraphs 30-42 of Mr. Sapienza's First Affidavit. *See* Plaintiffs' Statement of Facts [35] at 11-13, First Sapienza Affidavit [34-4] at 7-10.  None of these paragraphs, however, cite any evidence in the record that contains these facts.

For these reasons, plaintiffs have failed to satisfy their burden to  "come forward with evidence that would be sufficient to support a jury verdict in [their] favor" on this claim. Goenaga, 51 F.3d at 18.  Accordingly, I recommend that this claim be dismissed.

## CONCLUSION

For these reasons, I recommend that this court: grant Sapienza's motion [34] with respect to defendant O'Connor as to plaintiffs' 5th cause of action, but deny this motion as to Affordable Electric; deny plaintiffs' motion with respect to defendants Sciandra, Comerford, and the City of Buffalo as to the 5th cause of action; and grant defendants' motion [25] with respect to plaintiffs' remaining claims.  In addition, I recommend that this court afford Sapienza the opportunity to prove his damages by further submissions to the court documenting his loss from

- 23 -

the time the City suspended his license to the time it was reinstated.  Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by October 31, 2022. Any requests for extension of this deadline must be made to Judge Sinatra.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: October 17, 2022

/s/

JEREMIAH J. MCCARTHY
United States Magistrate Judge

- 24 -