UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



JOSEPH SAPIENZA, and
AFFORDABLE ELECTRICAL
SERVICES BY SAPIENZA ELECTRIC,
INC.,

   Plaintiffs,

  v.

20-CV-634 (JLS) (JJM)

CITY OF BUFFALO,
DEPARTMENT OF PERMIT &
INSPECTION SERVICES,
CITY OF BUFFALO EXAMINING
BOARD OF ELECTRICIANS,
KEVIN O'CONNOR,
SAL SCIANDRA,
JAMES COMERFORD, JR.,
JOHN DOE(S),

   Defendants.

## DECISION AND ORDER

Plaintiffs Jospeh Sapienza and Affordable Electrical Services by Sapienza

Electric, Inc., ("Affordable Electric Services") commenced this action pursuant to 42

U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. Dkt. 1. Plaintiffs assert eleven claims

for relief for violations of the First and Fourteenth Amendments and for various

violations of state law, stemming from a suspension of Sapienza's master

electrician's license in September 2018. *Id.* On September 29, 2021, this Court

referred the case to United States Magistrate Judge Jeremiah J. McCarthy for all

proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Dkt. 29.

1

Presently before the Court is Judge McCarthy's Report and Recommendation ("R&R") addressing the pending motions to dismiss and for summary judgment. For the reasons below, this Court accepts and adopts Judge McCarthy's R&R in part. In particular, qualified immunity requires dismissal of Sapienza's claims against O'Connor. Defendants' motion, therefore, is granted in full.

## BACKGROUND[1]

### I.   Factual Background

Sapienza holds a master electrician license issued by the City of Buffalo Examining Board of Electricians ("the Board"). Dkt. 1 ¶ 23. Plaintiffs allege they raised concerns to the City of Buffalo and National Grid about the lack of a jumper program used by National Grid—those concerns were reiterated in a letter from an Erie County legislator to National Grid. *Id.* ¶¶ 71-90. As alleged in the complaint, Defendant O'Connor—the City of Buffalo's Chief Electrical Inspector—called Sapienza on or about August 31, 2018, to notify him that the Board had commenced an investigation into charges against him and Affordable Electric. *Id.* ¶ 92. O'Connor informed Sapienza that Sapienza was scheduled to appear before the Board. *Id.* ¶ 93. According to Sapienza, he thought O'Connor said that the hearing would be September 26, 2018. *Id.*; Dkt. 34-4 ¶ 22. Sapienza alleges that he received no other notice, written correspondence, etc. concerning a date when he was scheduled to appear before the Board. Dkt. 1 ¶¶ 95-96; Dkt. 34-4 ¶ 23.

---

[1] This Court provides only a short summary of the factual background relevant to this decision and order.

On September 12, 2018, O'Connor called Sapienza to inform him that his license had been suspended because he failed to attend the scheduled hearing. Dkt. 1 ¶ 97; Dkt. 34-4 ¶ 24. Sapienza received a written notice—dated September 13, 2018—from the City's Department of Permit & Inspection that confirmed his license was suspended for failure to appear for a scheduled hearing before the Board. Dkt. 1 ¶ 100. No report was issued by the Board regarding Sapienza's case, as required by the City of Buffalo Charter. *Id.* ¶¶ 101-03. After Plaintiffs' counsel contacted O'Connor and counsel for the City to alert them of the violation of procedure, Sapienza's license was reinstated approximately a week later. *Id.* ¶¶ 104-05; Dkt. 34-4 ¶ 28. During that brief suspension period, Sapienza and Affordable Electric were unable to take on new jobs and had to turn away customers under contract for electrical services in the City of Buffalo. Dkt. 1 ¶ 106; Dkt. 34-4 ¶ 31.

Sapienza's other allegations include that the Board and O'Connor selectively and arbitrarily enforced various provisions and requirements of the City of Buffalo Charter to Plaintiffs' economic detriment. *See* Dkt. 1 ¶ 108-68.

## II.     Procedural Background and the R&R

Plaintiffs commenced this action on May 29, 2020. Dkt. 1. The City Defendants[2] moved for summary judgment on September 17, 2021. Dkts. 25, 26. In

---

[2] The City Defendants include the City of Buffalo, City of Buffalo Examining Board of Electricians, City of Buffalo Department of Permit & Inspections, Sal Sciandra, James Comerford, Jr., and Kevin O'Connor. Dkt. 25-1 ¶ 1. Defendants Joseph McSweeney and National Grid were dismissed by stipulation on May 18, 2021. Dkts. 21, 22. Defendant John Greer was dismissed by stipulation on December 9, 2021. Dkts. 41, 42, 43.

response, Plaintiffs moved for partial summary judgment against Kevin O'Connor on November 5, 2021. Dkts. 34, 35. Judge McCarthy held oral argument on February 1, 2022 to address the pending motions. Dkt. 50.

On October 17, 2022, Judge McCarthy issued an R&R, recommending the motions be granted in part and denied in part. Dkt. 53. The R&R first recommended that, as conceded by Plaintiffs, Plaintiffs' second (substantive due process), fourth (violation of the privileges and immunities clause), sixth (conspiracy to violate constitutional rights), tenth (intentional infliction of emotional distress), and eleventh (negligent infliction of emotional distress) claims should be dismissed. Dkt. 53, at 2. The R&R further recommended that any claims against the Board, the Department of Permits & Inspection Services, and John Doe Defendants should also be dismissed. *Id.* at 2-3.

As to Plaintiff's cross-motion for summary judgment on the procedural due process claim (Dkt. 34), Judge McCarthy first recommended denying Defendants' request to strike the motion and to consider the late-filed cross-motion. Dkt. 53, at 6. As to the merits of the cross-motion, Judge McCarthy recommended granting Sapienza's motion as against Kevin O'Connor; denying the motion as to Affordable Electric; and denying Plaintiffs' motion with respect to Defendants Sciandra, Comerford, and the City of Buffalo. *Id.* at 7-12. Judge McCarthy recommended that Sapienza be given "an opportunity to prove his damages, by further submissions to the court documenting his loss from the time the City suspended his license to the time it was reinstated." *Id.* at 12. Judge McCarthy recommended

granting Defendants' motion with respect to Plaintiffs' remaining constitutional claims—equal protection, retaliation, and *Monell*—as well as the remaining state law claims—defamation and tortious interference. *Id.* at 13-23.

Both parties filed timely objections. Dkts. 54, 55. Plaintiffs objected to numerous conclusions of the R&R, including limiting Plaintiffs' damages for the procedural due process claim to written submissions and to the period of the license suspension. *See generally* Dkt. 54. Defendants responded in support of most of the R&R's recommendations and conclusions, including dismissal of most of Plaintiffs' claims. Dkt. 58. Plaintiffs replied. Dkt. 59.

As for Defendants' objections, they argue that the R&R: (1) improperly considered Plaintiffs' untimely cross-motion; (2) failed to grant Defendants' motion as to the procedural due process claim; (3) improperly granted Plaintiff Sapienza summary judgment on the procedural due process claim; and (4) failed to address Defendants' qualified immunity arguments. *See generally* Dkt. 55, at 2. Plaintiffs responded in support of the R&R's conclusions as to the procedural due process claim. Dkt. 57. Defendants replied. Dkt. 60.

## DISCUSSION

### I. Review of the R&R

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a *de novo* review of those portions of a magistrate judge's

recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72(b)(3).

This Court has carefully reviewed the R&R, the objections and related

briefing, and the relevant record in this case.  Based on that *de novo* review, the

Court accepts and adopts the R&R, except as addressed below.

## II.   Sapienza's Procedural Due Process Claim

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any

person of . . . property, without due process of law."  U.S. Const. amend. XIV, § 1;

*Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).  In a Section 1983 suit, the court

must determine: "(1) whether a property interest is implicated, and, if it is, (2) what

process is due before the plaintiff may be deprived of that interest."  *Nnebe*, 644

F.3d at 158.  The appropriate process depends on the balancing of the three factors,

set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): (1) "the private interest

that will be affected by the official action;" (2) "the risk of erroneous deprivation of

such interest through the procedures used;" and (3) "the Government's interest,

including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail."  The touchstone of

due process is "the requirement that 'a person in jeopardy of a serious loss (be

given) notice of the case against him and opportunity to meet it.'"  *Spinelli v. City of*

*New York*, 579 F.3d 160, 169 (2d Cir. 2009) (quoting *Mathews*, 424 U.S. at 348-49).

## A. The R&R's Analysis of the *Mathews* Factors

As to the first *Mathews* factor, the R&R concluded that Sapienza had a strong protected property interest in the master electrician license, based on the City of Buffalo Charter providing that such a license enables his ability to do electrical work within the City. Dkt. 53, at 7. The R&R cited *Spinelli* for the proposition that, once a government has issued a business license to an individual, "the government cannot deprive the individual of such an interest without appropriate procedural safeguards." *Id.* at 8 (quoting *Spinelli*, 579 F.3d at 169). The R&R further noted that the Supreme Court has "repeatedly recognized the severity of depriving someone of his or her livelihood." *Id.* (quoting *Nnebe v. Daus*, 931 F.3d 66, 84 (2d Cir. 2019)). The R&R determined, however, that Affordable Electric—listed as the "Business Name" on the license—did not have a property interest in the master electrician license, because it was specifically issued to Sapienza. *Id.* at 3 n.2.

As to the second factor, the R&R concluded that there was a high risk of erroneous deprivation through the procedure actually used here: a brief phone call that either did not state, or erroneously stated, the actual date of the meeting Sapienza was to attend. *Id.* at 8. The phone call may or may not have included a discussion of the reason he was to attend, and the call did not include a warning that failure to attend could result in suspension of his license. *Id.* While the R&R noted some discrepancies regarding whether a date was mentioned during the call, or whether Sapienza was aware of the timing of the next regularly scheduled

monthly meeting, the R&R determined that even verbal notice of the actual date of the September meeting would be insufficient to satisfy due process. *Id.* n.3. The R&R rejected Defendants' arguments that Sapienza's failure to appear at the meeting was a waiver of his right to a pre-deprivation hearing and that the "limited" period of the suspension means there was no due process violation. *Id.* at 9-10.

Lastly, as to the third factor, the R&R concluded that the government's interest was less substantial—that is, the City's interests would not be curtailed by providing written notice prior to a hearing, and no exigent circumstances were alleged that would advise against pre-deprivation notice. *Id.* at 10-11.

In sum, the R&R determined that these factors favored Sapienza and recommended the court grant summary judgment on this cause of action in Sapienza's favor against Defendant O'Connor. *Id.* at 11.

### B. Analysis of the *Mathews* Factors

This Court now reviews the objections to the R&R's analysis of the *Mathews* factors.

#### 1. Private Interest

Plaintiffs objected to Judge McCarthy's determination that it was only Sapienza—rather than Sapienza and Affordable Electric—who had a constitutionally protected property interest. Dkt. 54, at 4-5. Defendants did not specifically object to the R&R's finding of a property interest. Dkt. 55, at 10-15.

8

The Court agrees with the R&R's analysis and conclusion that Sapienza had a strong private interest in his electrical license. As noted by the Second Circuit, this factor "favors more extensive process where the interest at stake is 'operating a business and . . . pursuing a particular livelihood.'" *Nnebe*, 931 F.3d at 84 (quoting *Spinelli*, 579 F.3d at 171). There is a "particular concern about the inability to remedy this type of deprivation," as "a licensee erroneously deprived of a license cannot be made whole simply by reinstating the license," and the "interim period between erroneous deprivation and reinstatement can be financially devastating to the licensee." *Id.*

The Court further agrees that Plaintiffs failed to show that Affordable Electric—listed as a business, not as a holder of the license—has a protected interest as well. Plaintiffs have not provided any authority for this argument. A review of caselaw involving licenses either have an individual businessowner as plaintiff who holds the license or involves a business that was itself issued the license. *Compare Martorelli v. Cossette*, No. 3:10CV236 JBA, 2012 WL 1067631, at *3-4 (D. Conn. Mar. 30, 2012) (individual plaintiff brought lawsuit related to deprivation of pawnbroker license), *with Schneider v. Chandler*, No. 16CV6560(DLC), 2018 WL 770395 (S.D.N.Y. Feb. 7, 2018) (lawsuit brought on behalf of individual engineer who was awarded title of "Special Inspector" and firm credentialed as a "Special Inspection Agency" by the municipality).

9

## 2. The Risk of Erroneous Deprivation

Defendants objected to the R&R's conclusions as to this factor. Defendants argued that Sapienza was actually notified and would have been given an opportunity to address the concerns raised before the license was suspended—but failed to appear. Dkt. 55, at 11. Defendants further argued that Sapienza was provided sufficient post-deprivation process—including immediately receiving a "Notice of Violation" with information regarding a "Re-Review Due Date" to address concerns. *Id.* Defendants argued that the R&R failed to address this post-deprivation process, particularly in light of Second Circuit caselaw holding that an Article 78 proceeding is an adequate post-deprivation remedy in this context. *Id.* at 12. Defendants further cited to the City of Buffalo Charter providing that, for a "Revocation of License," three days' notice is required—but no form of notice is specified. *Id.* at 15.

The Court now considers the "risk of erroneous deprivation" under the "procedures used and the value of other safeguards"—that is, the Court will consider the extent to which the notice Sapienza actually received mitigated the risk of prolonged erroneous deprivation of his license.

To comply with due process, notice must "set forth the alleged misconduct with particularity." *Spinelli*, 579 F.3d at 171-72 (quoting *In re Gault*, 387 U.S. 1, 33 (1967)). As the R&R correctly observes, notice "contemplates specification of acts or patterns of conduct" rather than "general, conclusory charges unsupported by specific factual allegations." Dkt. 53, at 8-9 (quoting *Spinelli*, 579 F.3d at 172). The

R&R also cited *Spinelli* to state that "the degree of required specificity also increases with the significance of the interests at stake"—and that those interests are "substantial" when "implicating the practice of one's chosen profession." *Id.* at 9 (quoting *Spinelli*, 579 F.3d at 172). The "general rule" is that a pre-deprivation hearing is required—the *Mathews* inquiry "'provides guidance' in determining whether to 'tolerate' an exception to the rule requiring pre-deprivation notice and hearing." *Nnebe*, 644 F.3d at 158 (quoting *Krimstock v. Kelly*, 306 F.3d 40, 60 (2d Cir. 2002)).

This Court agrees with the R&R's conclusion that the notice provided to Sapienza prior to his license suspension was inadequate. According to Defendants, O'Connor informed Sapienza that he was required to appear before the Examining Board at the next regularly scheduled monthly meeting, which was held on September 12, 2018—the date of which Sapienza could easily ascertain, Defendants maintain, as he had previously been to multiple meetings. Dkt. 25-10 ¶¶ 46-47 (First O'Connor Affidavit).

Even if O'Connor did convey the actual date of the next hearing to Sapienza during the phone call, such notice is still not sufficient, as it did not provide "specificity as to the actual infractions" alleged. *Spinelli*, 579 F.3d at 172. That is, even if Sapienza were aware of the meeting date, and that he was being summoned regarding electrical work at a particular address, he was not informed of the exact rules and regulations that he allegedly violated. Thus, he could not mount any specific defenses or objections to the allegations—that is, he was denied an

opportunity to be heard. *See id.* A "short conversation" with a government official—with no written notice before the deprivation— is not the sort of notice "reasonably calculated to apprise the interested parties of the pending of the action and afford them an opportunity to present their objections." *Weinberg v. Vill. of Clayton, N.Y.*, 537 F. Supp. 3d 344, 360 (N.D.N.Y. 2021) (quoting *Mullane v. C. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)) (finding verbal notice and the opportunity to cure any violations via an Article 78 proceeding was constitutionally inadequate).

The more challenging question—raised by Defendants in their objections and not discussed in the R&R—is whether the availability of post-deprivation process satisfies due process here. Upon review of the objections and relevant authority, this presents a close call. As one district court observed, the Second Circuit has "ruled variously" in dealing with procedural due process claims. *King v. N.Y. City Emps. Ret. Sys.*, 212 F. Supp. 3d 371, 399 (E.D.N.Y. 2016) (collecting cases to compare). On the one hand, the Second Circuit "has found that an individual's right to due process is violated when there is no hearing *prior to* the termination of a protectable interest, despite the availability of a post deprivation hearing, such as an article 78 hearing." *Id.* (citing *Patterson v. Coughlin*, 761 F.2d 886, 893 (2d Cir. 1985) ("finding that where it was not impossible to accord inmate a predeprivation hearing prior to subjecting him to administrative segregation, a postdeprivation article 78 proceeding or action for damages in the Court of Claims, was inadequate to meet requirements of due process.").

On the other hand, courts often have dismissed procedural due process claims based on "the opportunity to seek post-deprivation relief in New York state court under Article 78." *King v. City of New York*, No. 22-231, 2023 WL 2398679, at *3 (2d Cir. Mar. 8, 2023) (citing *Locurto v. Safir*, 264 F.3d 154, 173, 175 (2d Cir. 2001) ("approving of a 'minimal' pre-deprivation hearing followed by the availability of an Article 78 proceeding, which 'constitutes a wholly adequate post-deprivation hearing for due process purposes'"); *see also Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d 877, 882 (2d Cir. 1996) (where there "is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty," section 1983 is not the appropriate vehicle under for a due process claim).

Some courts have differentiated between two types of claims when evaluating the importance of the availability of an Article 78 proceeding: claims based on established procedures, versus claims based on random, unauthorized acts by state employees. *See, e.g., Pierre v. N.Y. City Taxi & Limousine Comm'n*, No. 17-CV-973 (MKB), 2017 WL 1417257 (E.D.N.Y. Apr. 19, 2017) (citing *HANAC*, 101 F.3d at 880). Thus, where a plaintiff alleges a deprivation of a protected interest based on "a random, unauthorized act by state employees, 'the "due process" required by the fourteenth amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing.'" *Nestle Waters N. Am., Inc. v. City of New York*, No. 15-CV-05189 (ALC), 2016 WL 3080722, at *6 (S.D.N.Y. May 25, 2016) (quoting *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir.

1992)).  In New York, an Article 78 proceeding is considered "a perfectly adequate postdeprivation remedy. . . ."  *Id.* (quoting *HANAC*, 101 F.3d at 881).

On the other hand, when the deprivation occurs "in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *HANAC*, 101 F.3d at 880.  Where the deprivation is "systemic," then plaintiffs have a "well-established right to pursue their claims in federal court without resorting to state judicial remedies." *Van Oss v. New York*, 783 F. Supp. 2d 681, 695 (S.D.N.Y. 2011).

The distinction between "random and unauthorized conduct and established state procedures, however, is not clear-cut." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).  The "pragmatic considerations" of this distinction, however, shed some light: the "controlling inquiry" is "whether the state is in a position to provide for pre-deprivation process." *HANAC*, 101 F.3d at 880 (quoting *Hudson v. Palmer*, 468 U.S. 517, 534 (1984)); *see also Rivera–Powell,* 470 F.3d at 466 n.8 ("[T]o the extent that the purpose of the [state-authorization] inquiry is to determine whether the government actor could have provided pre-deprivation process, that question must clearly be answered in the affirmative here, because the Board actually conducted a hearing.").

Here, Defendants were in a position to provide pre-deprivation process because, as Defendants allege, Sapienza was supposed to attend the meeting and address the allegations before his license was suspended.  As in the R&R, this Court

14

is not persuaded that Sapienza "waived" his right to be heard, as in the *Smith* case—that is, Sapienza could not be found to have waived his right to a hearing when there are no facts that Sapienza was properly notified of his right to attend that meeting and then deliberately refused to participate. Dkt. 53, at 9 (discussing *Smith v. Fischer*, 803 F.3d 124 (2d Cir. 2015)).

The crux is that there was not proper written notice to Sapienza. In *Spinelli*, the Second Circuit observed that the notice provided for in the regulations—that is, a notice of determination letter specifying the grounds for suspension and notifying the licensee of the opportunity for a hearing—would likely have been constitutionally adequate—if the governmental entity had complied with that regulation. *See Thomas v. City of New York*, No. 18CV2781(DLC), 2018 WL 5282889 (S.D.N.Y. Oct. 24, 2018) (discussing *Spinelli*, 579 F.3d at 172). It is evident here that the risk of an erroneous deprivation is too great when the notice given is in the form of verbal instruction in a phone call.[3]

---

[3] As the R&R noted, the City Charter provisions themselves support that notice must be given prior to suspension of a master electrician license. Dkt. 53, at 10-11; *see* City Charter § 165-13(A) ("Every such license may, after due notice to the holder thereof and opportunity to be heard, be suspended or revoked by the Commissioner of Permit and Inspection Services upon recommendation of the Board for failure or refusal of the licensee to comply with the City Code and National Electrical Code requirements or for other cause deemed sufficient by the Board."). This Court further notes that the provision requiring three-day notice cited by Defendants in their objections is located in the section of the Charter concerning journeyman electricians, not master electricians. Dkt. 55, at 15.

### 3. The Government's Interest

The Court now examines the third *Mathews* factor: the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. Defendants briefly objected to the R&R's analysis of this factor, in that the R&R failed to give any weight to the important and significant interest that the City has in electrical permitting and inspection services. Dkt. 55, at 20.

This Court agrees with the R&R's analysis that the City's interests would not be curtailed or significantly burdened by providing written notice prior to a hearing. Dkt. 53, at 10. In particular, the R&R correctly notes that this is not a case that presents "exigent circumstances necessitating very prompt action" that would be "sufficient to justify the City's failure to provide [plaintiff] with pre-deprivation notice or a hearing." *Id.* (citing *Spinelli*, 579 F.3d at 170). The City, of course, has an important interest in ensuring electrical work is done safely. Yet this interest is easily distinguished from that in *Spinelli* and similar cases that involved more exigent circumstances related to public safety. *See, e.g, Spinelli*, 579 F.3d at 175-74 (discussing the "urgent security situation in post-September 11th New York City" and the need for prompt seizing of firearms); *Nnebe*, 931 F.3d at 85-86 (discussing the government's significant interest in immediately suspending taxi drivers who are arrested for a felony or serious misdemeanor, in order to ensure the "safety of the taxi-riding public" when the government has minimal information); *B & B Target Ctr., Inc. v. Figueroa-Sancha*, 871 F. Supp. 2d 71, 78 (D.P.R. 2012)

(discussing how the government's strong interest in preventing the unlicensed sale and distribution of firearms necessitated prompt action in revoking a license without a pre-revocation hearing).

These more time-sensitive, pressing government interests in safety provide justification for the lack of pre-deprivation process—and so in those cases, the analysis appropriately shifts focus to whether there is adequate post-deprivation process, within a reasonable time. *B&B Target Ctr., Inc.*, 871 F. Supp. 2d at 79; *see also Spinelli*, 579 F.3d at 174. *Accord Weinberg*, 537 F. Supp. 3d at 361 (noting that a business with ongoing structural concerns "was not an emergency situation (i.e. the impending collapse of a building) that required an immediate response" justifying government action without pre-deprivation notice and opportunity to be heard); *Martorelli*, 2012 WL 1067631, at *5 (contrasting how plaintiff received notice and a hearing, all before revocation of a pawnbroker's license that was used to fence stolen goods, with *Spinelli*'s lack of pre-deprivation notice due to the public welfare exigencies of revoking a firearm dealer's license).

As noted in the R&R, the timing of events in this case does not support the conclusion that exigent circumstances existed for revoking a license without a hearing. Dkt. 53, at 10. Given the lack of a compressed timeline, it is not clear why the verbal notice provided by O'Connor could not have been followed by written notice of the meeting that was taking place at a later date. *Id.*; *see also Panzella v. Sposato*, 863 F.3d 210, 219 (2d Cir. 2017), *as amended* (July 18, 2017) (in analyzing

the third *Mathews* factor, noting that the county had not "provided any evidence that the type of hearing proposed by [plaintiff]. . . would be overly burdensome").

Accordingly, this last factor also weighs in Sapienza's favor. For the reasons set forth in the R&R as well as above, insufficient notice was provided to Sapienza prior to the suspension of his master electrician's license to satisfy his right to procedural due process.

## III.   Qualified Immunity

Defendants argue that, even if the R&R correctly ruled on the procedural due process claim, the R&R erred in not determining Defendants were entitled to qualified immunity. Dkt. 55, at 20. The Court now addresses this argument.

### A. Legal Standards

Qualified immunity protects public officials from legal actions brought under 42 U.S.C. § 1983 if their behavior does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mudge v. Zugalla*, 939 F.3d 72, 79 (2d Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The issues on qualified immunity are: "(1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Id.* (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)). Courts are "permitted to exercise [their] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of

18

the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For a right to be clearly established, its "contours . . . must be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Mudge*, 939 F.3d at 79 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  To make this decision, "a court in this Circuit considers 'Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct.'" *Bangs v. Smith*, No. 21-CV-6475-FPG, 2022 WL 1693308, at *6 (W.D.N.Y. May 26, 2022) (quoting *Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020)).

In the context of a motion for summary judgment, a defendant is entitled to qualified immunity when "no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *Callahan v. Cnty. of Suffolk*, 602 F. Supp. 3d 399, 406 (E.D.N.Y. 2022) (quoting *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001)); *see also Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)).

## B. Application

Notice given to Sapienza prior to his license revocation was constitutionally inadequate.  Nevertheless, based on the state of the caselaw, O'Connor is entitled to qualified immunity on the procedural due process claim.

Because the *Mathews* balancing test involves a flexible, context-dependent approach, it is rare that prior precedents will have "definitively resolved a novel

19

claim of procedural due process." *Francis v. Fiacco*, 942 F.3d 126, 149 (2d Cir.
2019). This makes for "particularly fertile ground for qualified immunity, given
that state officials can be liable only for violations of rights that have been
established 'beyond debate' and with 'particular[ity]' by existing constitutional
precedents." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

This case falls into that fertile ground. Assuming that O'Connor violated a
clearly established right, the Court cannot conclude that this particular due process
right was established "beyond debate" and with sufficient particularity by
precedent. *Id.* That is, a reasonable jury, viewing all facts in favor of Sapienza,
could not conclude it was objectively unreasonable for O'Connor to believe that he
was acting in a fashion that did not clearly violate an established constitutional
right. *Callahan*, 602 F. Supp. 3d at 406.

As shown above, there is ample authority discussing the importance of proper
notice in the procedural due process context. But in the qualified immunity
analysis, the Supreme Court "has admonished that rights should not be defined at a
high level of generality and instead must be 'particularized to the facts of the
case.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1090 (2d Cir. 2021) (quoting *White*, 580
U.S. at 79).

This Court is not aware of any Second Circuit or Supreme Court authority
that is sufficiently "particularized to the facts of [this] case." *Id.* As noted by
Defendants, *Spinelli*—while instructive—is not a pertinent authority for analyzing
qualified immunity in this case. Dkt. 55, at 23. First, *Spinelli* and other precedent

involved different facts of exigent circumstances and analyzed the adequacy of post-deprivation—rather than pre-deprivation process, as here. *See generally Spinelli*, 579 F.3d at 170-74 (dismissing plaintiff's argument that she was entitled to pre-deprivation due process in light of the exigent circumstances and focusing the *Mathews* analysis on the post-deprivation process); *see also Nnebe*, 931 F.3d at 86 (quoting *Spinelli*, 579 F.3d at 174) ("The relevant inquiry is whether the City had a legitimate interest in not providing [taxi drivers] with meaningful post-deprivation due process."). *Spinelli* and similar precedent also are inapposite because they involved lengthy periods during which plaintiffs still had not received post-deprivation process. *Spinelli*, 579 F.3d at 173 (discussing how the administrative hearing process was not available to Spinelli until completion of the investigation into the report, which could take "months to years" to decide); *Nnebe*, 931 F.3d at 87 (a lengthy suspension of a taxi-driver's license, lasting weeks or months, based on an arrest, without an independent determination of probable cause or deeper evaluation violates due process).

These cases are in contrast to the unique facts presented here, where some, albeit scant, verbal notice was provided prior to the suspension, Sapienza had familiarity with the Board's meetings and probable awareness of the date of the next monthly meeting, and the period before license reinstatement was relatively short.

Accordingly, Defendant O'Connor has qualified immunity and, therefore, is entitled to summary judgment on this claim.

## CONCLUSION

For the reasons set forth above, this Court accepts and adopts the R&R's recommendations, except that this Court also *grants* Defendants' motion for summary judgment as to Sapienza's procedural due process claim.

Accordingly, Plaintiffs' motion with respect to the procedural due process claim against Defendant O'Connor, and in all other respects, is DENIED, and Defendants' motion is GRANTED in full.

The Clerk of Court is directed to close the case.

SO ORDERED.

Dated:      August 11, 2023
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

22